Case No. 23-4059

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

**MARTHA ELLIS,**

Plaintiff – Appellee,

v.

**SALT LAKE CITY CORPORATION, KARL LIEB, BRIAN DALE,
and ROBERT McMICKEN**,

Defendants – Appellants.

---

Appeal from the U.S. District Court, Central Division, District of Utah
The Honorable Jill N. Parrish, District Judge
District Court Case No. 2:17-cv-00245-JNP-JCB

---

**APPELLANTS' REPLY BRIEF**

---

**ORAL ARGUMENT REQUESTED**

---

Respectfully submitted,

Katherine R. Nichols
Senior City Attorney
SALT LAKE CITY CORPORATION
P.O. Box 145478
451 South State Street, Suite 505A
Salt Lake City, Utah 84114-5478
Telephone: (801) 535-7788
Katherine.Nichols@slcgov.com

*Attorneys for Defendants/Appellants Salt
Lake City Corporation, Karl Lieb, Brian
Dale, and Robert McMicken*

June 14, 2024

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

I.    THE CSC DECISION IS INADMISSIBLE AND SHOULD NOT HAVE
      BEEN CONSIDERED ................................................................................ 1

      A.   The Admissibility of the CSC Decision Is Properly Before This Court ......... 1

      B.   The District Court's Rule 803 Ruling Constituted an Error of Law .............. 3

      C.   The CSC Decision Is Inadmissible Under Rule 403 ........................................ 5

II.   THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED
      IMMUNITY ON PLAINTIFF'S GENDER DISCRIMINATION CLAIMS .......... 7

      A.   Plaintiff Was Required to Show Intent to Discriminate Based on Sex to
           Establish a Constitutional Violation ................................................................. 7

      B.   The District Court Did Not Find that McMicken Had an Intent to
           Discriminate on the Basis of Sex ...................................................................... 8

      C.   The District Court's Findings Do Not Show Lieb Had an Intent to
           Discriminate on the Basis of Sex ...................................................................... 8

      D.   Plaintiff Failed to Carry Her Burden to Show the Legitimate, Non-
           discriminatory Reasons Were Pretextual.......................................................... 9

           1.   The district court erred in applying the governing legal standard. .......... 9

           2.   Plaintiff failed to show an "overwhelming disparity" in
                qualifications. ......................................................................................... 10

           3.   Plaintiff failed to adduce admissible evidence to establish her
                demotion was pretext for intentional gender discrimination. ................ 11

III.  THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED
      IMMUNITY ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM . 12

      A.   The District Court Erred in Considering Plaintiff's Discrete Acts
           Allegations to Bolster Her Deficient Sexual Harassment Claim ................... 12

      B.   Neither the District Court Nor Plaintiff Identified Evidence that Lieb
           Engaged in Pervasive Harassment Based on Sex ........................................... 14

      C.   Neither the District Court Nor Plaintiff Identified Evidence that
           McMicken Engaged in Pervasive Harassment Based on Sex........................ 16

      D.   The District Court Erred in Concluding Dale's Conduct Met the Legal
           Standard for Pervasive Harassment ............................................................... 17

E.     Neither the District Court Nor Plaintiff Properly Analyzed Whether Any Individual's Conduct Violated Clearly Established Law ............................... 19

IV.   PLAINTIFF'S PENDENT TITLE VII AND *MONELL* CLAIMS ARE INEXTRICABLY INTERTWINED AND SHOULD BE DISMISSED ............... 21

CONCLUSION ........................................................................................................ 22

CERTIFICATION OF COUNSEL ................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Al-Hela v. Biden*, 66 F.4th 217 (D.C. Cir. 2023)...................................................4

*Beech Aircraft Corp. v. Rainey*, 488 U.S. 153 (1988)........................................3

*Bird v. W. Valley City*, 832 F.3d 1188 (10th Cir. 2016)..............................7, 22

*Bolden v. PRC Inc.*, 43 F.3d 545 (10th Cir. 1994) ...........................................15

*Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.,* 933 F.2d 853 (10th Cir. 1991)...................................................................................................9

*Chavez v. New Mexico*, 397 F.3d 826 (10th Cir. 2005) .......................15, 17, 18

*Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331 (11th Cir. 2020) ......4

*Denny v. Hutchinson Sales Corp.*, 649 F.2d 816 (10th Cir. 1981)....................6

*Est. of B.I.C. v. Gillen*, 761 F.3d 1099 (10th Cir. 2014) ..................................19

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)..............................13, 15

*Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997) ...........................................21

*Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202 (10th Cir. 2022) .........10, 13

*Ford v. West*, 222 F.3d 767 (10th Cir. 2000) ............................................15, 18

*Heard v. Dulayev*, 29 F.4th 1195 (10th Cir. 2022)...........................................2

*Herring v. Keenan,* 218 F.3d 1171 (10th Cir. 2000) ........................................19

*Hicks v. Gates Rubber Co.*, 833 F.2d 1406 (10th Cir. 1987) ...........................18

*Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993) ................................21

*Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303 (10th Cir. 2005)...............9, 10, 11

*Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007)......................12

*Lollis v. City of Eufaula*, 249 F. App'x 20 (10th Cir. 2007) ..............................9

*Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir. 1995) ...........................22

*Morris v. City of Colo. Springs*, 666 F.3d 654 (10th Cir. 2012) ................13, 14

*O'Neal v. Ferguson Const. Co.,* 237 F.3d 1248 (10th Cir. 2001) ....................13

*Pearson v. Callahan*, 555 U.S. 223 (2009) .......................................................7

*Saucier v. Katz*, 533 U.S. 194 (2001) ..............................................................19

*Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007)................2

*Stepp v. Proctor*, 13 F.3d 407 (10th Cir. 1993)........................................15, 19

*Strickland v. United Parcel Serv., Inc.,* 555 F.3d 1224 (10th Cir. 2009).........17

*United States v. Hay*, 95 F.4th 1304 (10th Cir. 2024).......................................3

*Vasquez v. Davis*, 882 F.3d 1270 (10th Cir. 2018).............................................8

**Statutes**

42 U.S.C. § 1981 ..............................................................................................13

42 U.S.C. § 1983 ..............................................................7, 8, 15, 19, 21, 22

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*. ...................... 21, 22

**Rules**

DUCivR 7-1 ............................................................................................................ 2

Fed. R. Evid. 402 ................................................................................................... 7

Fed. R. Evid. 403 ......................................................................................... 1, 5, 7

Fed. R. Evid. 602 ................................................................................................... 7

Fed. R. Evid. 701 ................................................................................................... 7

Fed. R. Evid. 702 ................................................................................................... 7

Fed. R. Evid. 803 ..................................................................................... 1, 3, 4, 5, 6

## INTRODUCTION

The district court's ruling denying qualified immunity to Individual Defendants Karl Lieb, Rusty McMicken, and Brian Dale was premised on several key errors of law. The district court erred in admitting and heavily relying on the CSC Decision, which constituted inadmissible hearsay and should be excluded under Rule of Evidence 403. The district court also erred in concluding Plaintiff showed each Individual Defendant intentionally discriminated based on gender and in failing to even consider the legitimate, non-discriminatory reasons for each employment decision. Finally, the district court erred in holding each Individual Defendant's conduct met this Court's legal standard of pervasive sexual harassment and in failing to apply this Court's clearly established analysis for qualified immunity. Defendants request this Court reverse and grant qualified immunity for each Individual Defendant on Plaintiff's hostile work environment and gender discrimination claims and dismiss Plaintiff's related claims against Salt Lake City.

## I.    THE CSC DECISION IS INADMISSIBLE AND SHOULD NOT HAVE BEEN CONSIDERED

The district court erred in admitting and heavily (oftentimes exclusively) relying on the CSC Decision. Neither the district court nor Plaintiff disagreed with Defendants' objection that the CSC Decision is hearsay and would be inadmissible absent a valid exception. On appeal, Plaintiff has not shown the public records exception of Rule 803(8) applies. Moreover, the CSC Decision should be excluded under Rule 403.

### A.    The Admissibility of the CSC Decision Is Properly Before This Court

Plaintiff first contends that the admissibility of the CSC Decision does not fall within this Court's jurisdiction because she asserts the evidentiary question is not

inextricably intertwined with the qualified immunity determination. (Pl. Br. at 64.) Not so. Under the collateral-order doctrine, this Court has jurisdiction to consider legal questions related to the denial of qualified immunity, and the admissibility of evidence is just such a legal question. *See Heard v. Dulayev*, 29 F.4th 1195, 1200 (10th Cir. 2022) (recognizing this Court has jurisdiction over denial of qualified immunity "to the extent that it turns on an issue of law"). Even if that were not the case, this Court may review pendent issues that are "necessary to ensure a meaningful review of the appealable one." *Id.* at 1207 n.9. Because the CSC Decision was the primary and often only evidence the district court cited, whether that crucial evidence is admissible is necessary to ensure a meaningful review of the appealable qualified immunity question.

Plaintiff also asserts Defendants waived their evidentiary objections to the CSC Decision because she argues a "blanket assertion, with no supporting citations or argument" is insufficient. (Pl. Br. at 64 (quoting *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1180 n.3 (10th Cir. 2007)). But that cited language addressed the failure to develop an *appellate* argument. *See Simpson*, 500 F.3d at 1180 n.3 (stating that "[o]n appeal CU makes the blanket assertion . . ." (emphasis added)). Indeed, here, it was *Plaintiff* who failed to carry her burden before the district court. Defendants timely and properly objected to admission of the CSC Decision on a variety of grounds, including hearsay,[1] and Plaintiff failed to file a response to those objections despite court rules requiring her to do so. *See* D. Utah Local Rule DUCivR 7-1(b)(4). At the hearing,

---

[1] App. Vol. V at 1427–28 (Defs.' Reply).

Defendants raised still more objections to the CSC Decision.[2] Yet it was the district court, because of Plaintiff's failure to respond to the objections, that carried Plaintiff's burden by asserting the Rule 803(8) exception on her behalf, without providing Defendants an opportunity to brief the issue.[3] Plaintiff's contention that Defendants waived their objections because they never mentioned the Rule 803(8) exception is thus rather incredible because *she* was the one who should have raised it. Defendants also argued admission of the CSC Decision would be highly unfair, including because the Decision merely addressed how three other individuals viewed limited evidence when the jury should be deciding for itself what all the evidence presented at trial shows.[4]

## B.    The District Court's Rule 803 Ruling Constituted an Error of Law

The district court's decision to admit the CSC Decision was premised on a legal error. *See United States v. Hay*, 95 F.4th 1304, 1318 (10th Cir. 2024) ("subject[ing] to de novo review a trial court's legal conclusions about the Federal Rules of Evidence"). Under Rule 803(8), a court has "the obligation" to exclude public records when there are indicia of lack of trustworthiness. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 (1988). In fact, "[t]his trustworthiness inquiry . . . was the [Rules] Committee's primary safeguard against the admission of unreliable evidence." *Id.* Here, however, district court erroneously

---

[2] App. Vol. VI at 1649–51, 1672–75 (Trans.)

[3] App. Vol. VI at 1657 (Trans.)

[4] App. Vol. VI at 1649–51, 1672–75; App. Vol. V at 1427–28, 1471–72, 1474. *See also United States v. Murphy*, 100 F.4th 1184, 1194 (10th Cir. 2024) ("Our precedent makes clear that defendants do not waive appellate review of discrete theories that build upon broad arguments made before the district court. In other words, defendants do not waive specific theories by asserting broader, related arguments in the district court.").

ruled the undisputed evidence of a personal relationship between Plaintiff and the CSC Chairperson went to "the weight the jury gives this evidence *rather than to its admissibility*."[5]

On appeal, Plaintiff did not respond to this contention. Instead, she misconstrues Defendants' argument and burden by asserting Defendants claimed their evidence "conclusively establishes that the CSC decision was untrustworthy." (Pl. Br. at 66.) But the plain language of Rule 803(8) does not require Defendants to prove or "conclusively establish" untrustworthiness. It requires Defendants to "*show*" the "method or circumstances of preparation *indicate* a lack of trustworthiness." Fed. R. Evid. 803(8)(b) (emphases added). This is because the "[j]ustification for the exception is the assumption that a public official will perform his duty properly." *Id.* committee's note to 1972 rules. After all, "[m]ost investigators under a public duty lack a motive to distort the facts or their conclusions." *Crawford v. ITW Food Equip. Grp., LLC*, 977 F.3d 1331, 1349 (11th Cir. 2020) (internal quotation marks omitted). The Rule thus serves the purpose of alleviating the "administrative burdens that would accompany having to authenticate and lay a foundation for the introduction of each" government document, particularly when hauling officials into court is not "likely to uncover an error of material proportions." *Al-Hela v. Biden*, 66 F.4th 217, 237 (D.C. Cir. 2023).

However, pursuant to the Rule's text and purpose, a document loses that presumption as soon as there are indicia of untrustworthiness. Defendants cleared this

---

[5] App. Vol. VI at 1575 (Decision) (emphasis added).

threshold by showing—with evidence Plaintiff did not dispute—that Plaintiff was personal friends with the same individual who served as CSC Chairperson and authored the CSC Decision. And the CSC Decision—including its inflammatory language—was written consistent with such a bias. (*See* Defs.' Br. at 20–21.) Crucially, the committee notes specifically identify "*possible* motivation problems" as a factor indicating untrustworthiness. Fed. R. Evid. 803(8)(b) committee's note to 1972 rules (emphasis added); *see also id.* committee's note to 2014 amendments (recognizing a party is not even "necessarily required to introduce affirmative evidence of untrustworthiness"). The district court therefore committed legal error when it held the uncontroverted evidence of bias and motive went to the weight and not the admissibility of the evidence. Defendants showed the CSC Decision indicated a lack of untrustworthiness, and it should have been excluded.

### C.    The CSC Decision Is Inadmissible Under Rule 403

Plaintiff declined to engage with Defendants' argument that the CSC Decision is inadmissible under Rule 403. Instead, Plaintiff merely asserts the cases Defendants cited are not factually identical to the present circumstances. (Pl. Br. at 69.) This contention misses the point. Numerous courts have recognized that it is proper to exclude similar reports and decisions under Rule 403 despite the fact that, as Plaintiff noted, (*id.* at 68), Rule 403 is an extraordinary remedy. This is precisely because the dangers of such reports substantially outweigh their limited probative value.

Plaintiff did not address the tremendous risk of unfair prejudice and juror confusion from a decision that considered very different issues, under different legal standards, and with significantly limited evidence compared to what will be presented at trial. (*See* Defs.'

Br. at 20–21.) She also did not dispute that admission of the CSC Decision would result in an incredible delay and waste of time in having to litigate every aspect of the CSC proceedings in addition to Plaintiff's claims. (*See id.* at 21.) Indeed, she did not even argue what probative value the CSC Decision has.

This Court has affirmed exclusion in nearly identical circumstances. In *Hall v. Western Production Co.*, this Court affirmed exclusion under Rule 403 of a state commission report finding no age discrimination, even though the report satisfied Rule 803(8). 988 F.2d 1050, 1057 (10th Cir. 1993). This was because "all the evidentiary matter before the [commission] could be presented to the jury in some other form or fashion, and, therefore, the only purpose to be served by admitting into evidence the [] report would be to suggest to the jury that it should reach the same conclusion." *Id.* at 1058. That is precisely the circumstance here. The same evidentiary matter that was before the CSC will be presented to the jury. The only purpose for the CSC Decision is thus to convince the jury it should draw the same conclusions. The risk of unfair prejudice therefore substantially outweighs any minimal probative value.

Similarly, in *Denny v. Hutchinson Sales Corp.*, this Court affirmed exclusion of both a report finding racial discrimination and testimony by the report's author. 649 F.2d 816, 822 (10th Cir. 1981). The Court recognized the "jury was presented substantial admissible evidence on the matter" and thus there was "little probative value in either the [report's] determination or [author's] opinion on whether discrimination existed," but there was "a real possibility that the jury would give undue deference to such evidence." *Id.* Here, the CSC's opinion of the evidence is of little value when the jury will weigh the same evidence

6

for itself, and there is a very strong likelihood the jury would give undue deference to the CSC's conclusions rather than making its own. Thus, the CSC Decision should have been excluded under Rule 403.[6]

## II. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S GENDER DISCRIMINATION CLAIMS

### A. Plaintiff Was Required to Show Intent to Discriminate Based on Sex to Establish a Constitutional Violation

Plaintiff asserts the Individual Defendants' intent is irrelevant to their qualified immunity defense on her gender discrimination claim. (Pl. Br. at 27.) That is incorrect. The first prong of the qualified immunity analysis is whether Plaintiff can show a constitutional violation. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). To show a constitutional violation for a Section 1983 gender discrimination claim, Plaintiff must establish each "specific" Individual Defendant "*intentionally* discriminate[d] against Plaintiff because of her gender." *Bird v. W. Valley City*, 832 F.3d 1188, 1208 (10th Cir. 2016) (emphasis in original); *see also id.* (collecting cases establishing that "discriminatory intent or purpose is required to show a violation of the Equal Protection Clause"). As discussed below, it was error for the district court to conclude Plaintiff carried her burden on this first prong, and the Individual Defendants are entitled to summary judgment.

---

[6] The district court did not rule, and Plaintiff has not argued on appeal, that the CSC members could testify at trial to the contents of the CSC Decision. Had Plaintiff raised that argument, it would nonetheless fail. Such testimony would itself violate a host of Rules, including 402 (their opinions are not relevant); 602 (they have no personal knowledge of the evidence before the jury); 701 (improper lay opinion not based on witness's own perception); 702 (improper expert testimony not based on specialized knowledge, sufficient facts or data, or reliable principles and methods); and 403.

## B. The District Court Did Not Find that McMicken Had an Intent to Discriminate on the Basis of Sex

Plaintiff does not dispute that the district court did not find that McMicken intentionally discriminated against Plaintiff based on gender. Instead, she argues *Dale* had discriminatory intent, which should be imputed to McMicken. (Pl. Br. at 28–29.) But an official can be liable for a constitutional violation under Section 1983 based only on his own, personal participation. *See Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Without a finding, much less evidence, that McMicken intentionally discriminated based on sex, Plaintiff failed to show a constitutional violation. McMicken is entitled to qualified immunity on Plaintiff's gender discrimination claims.

## C. The District Court's Findings Do Not Show Lieb Had an Intent to Discriminate on the Basis of Sex

Plaintiff alleges Lieb personally violated the Equal Protection Clause related to the failure to promote her and her demotion. In denying Lieb qualified immunity, the district court made a single finding that because Lieb told Plaintiff "she had not 'demonstrated humility,'" Plaintiff "may have been criticized because she did not meet the Department's *contrary expectations for women*."[7] Defendants established that this finding is blatantly contradicted by the record evidence—the actual conversation recording—because Lieb made clear that he had the same expectation of humility for both male and female candidates. (*See* Defs.' Br. at 38–39.)

In response, Plaintiff argues the recording does not blatantly contradict the finding

---

[7] App. Vol. VI at 1564–65, 1569 (Decision) (emphasis added).

because it indicates Lieb expected humility of Plaintiff. (Pl. Br. at 54–56.) In so doing, Plaintiff ignores the key aspect of the finding—that such expectation was *contrary to the expectation for men*. After all, there is no discrimination if there is no difference in treatment based on gender. *See Lollis v. City of Eufaula*, 249 F. App'x 20, 25–26 (10th Cir. 2007) (unpublished) ("The equal protection clause is triggered when the government treats someone differently than another who is similarly situated." (quoting *Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.,* 933 F.2d 853, 859 (10th Cir. 1991))). Simply put, it cannot be evidence of intentional gender discrimination to expect the same attribute of both men and women. Because the only finding that Lieb intentionally discriminated based on sex was blatantly contradicted by the record, Plaintiff failed to show a constitutional violation. Lieb is entitled to qualified immunity.

### D.    Plaintiff Failed to Carry Her Burden to Show the Legitimate, Non-discriminatory Reasons Were Pretextual

1.    <u>The district court erred in applying the governing legal standard.</u>

To establish pretext, "an employee must proffer evidence that shows *each* of the employer's justifications are pretextual." *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1309 (10th Cir. 2005) (emphasis added) (internal quotation marks omitted). In other words, "proof of pretext [is] not sufficient to create a genuine issue of fact if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision." *Id.* at 1310 (second alteration in original). Thus, summary judgment is defeated "only if the company has offered no other reason that, *if that reason stood alone* (more precisely if it did not have support from the tainted reason), would have caused the company to take

the action of which the plaintiff is complaining." *Id.* (emphasis in original).

Here, however, Plaintiff does not dispute that the district court never considered whether *any* of the proffered reasons could have "stood alone" to support the decision. (*See* Pl. Br. at 29.) Nor did it consider whether any of those reasons were so full of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that they were "unworthy of credence." *Id.* The district court's analysis was thus contrary to this Court's standards. As discussed below, under the proper legal standard, Plaintiff's claims fail.

2.    Plaintiff failed to show an "overwhelming disparity" in qualifications.

For failure-to-promote claims, this Court has mandated that "minor differences between a plaintiff's qualifications and those of a successful applicant are not sufficient to show pretext"; instead, "the disparity in qualifications must be *overwhelming*." *Jaramillo*, 427 F.3d at 1308–09 (emphasis added) (internal quotation marks omitted). Thus, the Court "will infer pretext only when the plaintiff can *assure us* that the plaintiff is better qualified than the other candidates for the position." *Ford v. Jackson Nat'l Life Ins. Co*., 45 F.4th 1202, 1219 (10th Cir. 2022) (emphasis in original). On appeal, Plaintiff did not dispute this is the law, yet she made no effort to meet this burden. Nowhere in her brief did she even attempt to compare her qualifications to the candidates selected for the Operations and Administrative Assistant Chief Positions (Clair Baldwin and McMicken, respectively). (*See* Pl. Br. at 30–31.) The reason for this is plain: she cannot meet this burden.

For the Operations position, Baldwin—not Plaintiff—was the far better candidate. Not only did Baldwin have more years of experience than Plaintiff, but he also spent nearly his entire 25-year career in the Operations Division, whereas Plaintiff had spent the

majority of her career in non-operations roles. (*See* Defs.' Br. at 43–44.) For the Administrative position, McMicken and Plaintiff were comparable candidates, each with their own strengths and weaknesses. (*See id.* at 41–43.) But "[t]o show pretext, the disparity in qualifications must be 'overwhelming.'" *Jaramillo*, 427 F.3d at 1309. Thus, if an employer "could have believed in good faith that [the selected candidate] was *at least as well qualified* as [Plaintiff] was," a jury "could not find that this explanation was pretext for unlawful discrimination." *Id.* (emphasis added). The district court erred in failing to apply this standard. Instead, it did what this Court has forbidden—to "act as a super personnel department that second guesses employers' business judgments." *Id.* at 1308.

In sum, had the district court undertaken the legal analysis required by this Court, it would have concluded that Plaintiff failed to adduce evidence to show an overwhelming disparity in qualifications. She therefore failed to carry her burden to establish a constitutional violation, and the Individual Defendants are entitled to qualified immunity.

3.  <u>Plaintiff failed to adduce admissible evidence to establish her demotion was pretext for intentional gender discrimination.</u>

Neither the district court nor Plaintiff identified any evidence other than the CSC Decision to meet Plaintiff's burden to show her demotion was pretext for intentional gender discrimination. For the reasons stated above and in the Opening Brief, the CSC Decision is inadmissible. Without any evidence to support her pretext burden, Plaintiff failed to show a constitutional violation related to her demotion, and the Individual Defendants are

entitled to qualified immunity.[8]

## III. THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIM

### A. The District Court Erred in Considering Plaintiff's Discrete Acts Allegations to Bolster Her Deficient Sexual Harassment Claim

Plaintiff does not dispute that the district court itself concluded "the acts detailed by Ellis *are neither numerous nor individually severe*" and that it was only by considering Plaintiff's separate claims of retaliation and discrimination that the district court held Plaintiff showed a hostile work environment.[9] (Pl. Br. at 32.) But it is improper to use discrete discriminatory or retaliatory acts to bolster an otherwise insufficient hostile work environment claim.

A hostile work environment claim addresses just that—the environment. *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 638 (2007), *overturned on other grounds by statute* ("[T]he actionable wrong is the environment, not the individual acts that, taken together, create the environment."). It is concerned with *behavior* in the workplace, which is why case law discusses conduct such as "run-of-the-mill boorish, juvenile, or annoying behavior," *Morris v. City of Colo. Springs*, 666 F.3d 654, 664 (10th

---

[8] To the extent Plaintiff may later suggest the evidence submitted to the CSC could be submitted at trial in admissible form, Plaintiff made no effort at summary judgment to adduce any of that evidence. She did not attach as exhibits a single piece of documentary evidence or any testimony transcripts from the proceeding. (*See* App. Vol. IV at 1017–1391 (Pl. App'x).) She thus did not carry her burden at summary judgment to come forward with admissible evidence showing genuine disputes of material fact.

[9] App. Vol. VI at 1580 (Decision) (emphasis added). Plaintiff also did not dispute that no individual's conduct met this Court's standard for "severe." (*See* Defs.' Br. at 30.)

Cir. 2012), "the sporadic use of abusive language, gender-related jokes, and occasional teasing," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), and "intimidation, ridicule, and insult," *Morris*, 666 F.3d at 664. In contrast, discrimination and retaliation claims address discrete, adverse actions. *See Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222 (10th Cir. 2022) (recognizing an "adverse employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"). These claims are thus distinct causes of action to address distinct harms. While there may be some factual overlap to prove the elements of each, permitting discrete acts to form the basis of a harassment claim would erode the different standards[10] and allow for double recovery on the same harms.[11] Moreover, Plaintiff agrees discrete act claims are

---

[10] For example, there is no pretext analysis for a harassment claim. But the vast majority of the acts Plaintiff cites are employment actions for which Defendants had a legitimate, non-discriminatory/retaliatory reason. For example, Plaintiff claims Lieb sexually harassed her because he "denied her additional leave," "ordered her to work," and "signed Ellis's termination letter," (Pl. Br. at 34), for which Plaintiff asserted claims under the Americans with Disability Act. Plaintiff did not argue and the district court did not rule that these ADA allegations were a basis for her hostile work environment claim. *See* App. Vol. IV at 980– 81 (Pl. Opp'n). As a result, though there are significant legal errors, Defendants did not appeal the ADA rulings because they do not fall within this Court's limited jurisdiction. If the Court is inclined to consider Plaintiff's ADA and retaliation claims, Defendants request the Court order supplemental briefing so Defendants may fully present their arguments on each one of those nine additional claims.

[11] Plaintiff's reliance on *O'Neal v. Ferguson Const. Co.,* 237 F.3d 1248, 1258 (10th Cir. 2001), is misplaced. (Pl. Br. at 41.) In *O'Neal*, plaintiff presented "overlapping evidence of racial animus" for his hostile work environment and Section 1981 retaliation claims. 237 F.3d at 1258. The Court recognized plaintiff could rely on the same "overlapping evidence of racial animus" because both claims required a showing of racial animus. *Id.* Thus, *O'Neal* does not stand for the proposition that Plaintiff can bolster her deficient sexual harassment claim with allegations of discrete adverse employment actions.

subject to a stricter statute of limitations standard. (Pl. Br. at 33.) Were this Court to hold a discrete act was actionable under the hostile work environment rubric, plaintiffs could easily circumvent that governing precedent.

In sum, the district court committed legal error in holding a hostile work environment claim that could not stand on its own could nonetheless survive summary judgment when combined with other causes of action. Where the district court itself recognized the aggregate conduct was "neither numerous nor individually severe,"[12] Plaintiff has failed to show any individual committed a constitutional violation, and this Court need go no further. The Individual Defendants are entitled to qualified immunity.

### B.    Neither the District Court Nor Plaintiff Identified Evidence that Lieb Engaged in Pervasive Harassment Based on Sex

The district court concluded the Individual Defendants *in the aggregate* did not engage in "numerous" or "severe" conduct, which alone shows it was error to hold that any individual's conduct amounted to "a steady barrage of opprobrious . . . comments" on the basis of sex. *Morris*, 666 F.3d at 666 (alteration in original). Plaintiff contends Lieb's comment about humility was sufficient by asserting the Court is prohibited from drawing an inference in Lieb's favor that he "would have complained about an alleged lack of humility irrespective of Ms. Ellis's gender." (Pl. Br. at 34.) But Plaintiff turns the standard on its head. Lieb was not required to show he would have complained about lack of humility if Plaintiff was a man. Rather, it was Plaintiff's burden to come forward with evidence that she was treated differently based on her gender. She did not do so. The Court

---

[12] App. Vol. VI at 1580 (Decision).

cannot draw an inference that Lieb treated men and women differently from evidence that he treated men and women the same.

Similarly, Plaintiff contends even without the humility comment there is evidence that another individual "had heard Lieb make offensive comments regarding women." (Pl. Br. at 34.) These complaints are "vague and conclusory, without reference to specific dates or circumstances," and this Court has held such allegations do not "suffice to create a genuine issue of material fact." *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) (internal quotation marks omitted). In any event, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). And this Court has made it clear that two comments, even if inappropriate or offensive, are insufficient:

> These two comments fall far short of the "steady barrage" required for a hostile environment claim. We do not condone [defendant's] remarks. But given their exiguity, we cannot say that [defendant's] conduct "was pervasive or severe enough to alter the terms, conditions, or privilege[s]" of [plaintiff's] employment.

*Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)); *see also Stepp v. Proctor*, 13 F.3d 407, at *2 (10th Cir. 1993) (unpublished) ("Whatever may constitute a hostile work environment under 1983, two specific instances of improper conduct do not."). Thus, based on this record evidence and under the proper legal framework, the district court erred in concluding Plaintiff had shown Lieb's conduct met this Court's standard for a constitutional violation. Lieb is entitled to qualified immunity on Plaintiff's hostile work environment claim.

### C.    Neither the District Court Nor Plaintiff Identified Evidence that McMicken Engaged in Pervasive Harassment Based on Sex

The record is similarly devoid of gender-based harassment by McMicken. The only evidence cited against McMicken is the CSC Decision, which is inadmissible as discussed above, and in any event, never addressed any issues related to gender or discrimination. (*See* Defs. Br. at 24–25.) In response, Plaintiff contended there were numerous additional findings "implicating McMicken." (Pl. Br. at 36–39.) But the majority of these purported findings are simply from the CSC Decision. And the rest are either steps in the disciplinary process (for example, pre-determination notices) or a recitation of vague *allegations* Plaintiff had made (for example, that McMicken made defamatory statements about her work or had fostered hostility in the office).[13]

More to the point, however, *none* of these purported findings have anything to do with Plaintiff's gender.[14] Yet the district court concluded McMicken "never would have

---

[13] These "findings" related to the district court's analysis of whether Plaintiff had engaged in protected activity or exhausted administrative remedies. Thus, the district court did *not* find that McMicken had actually denied her "professional growth and networking opportunities, unjustifiably scrutinized her work, and made defamatory statements about her work" or that he had "fostered hostility in the office." Rather, it merely found that she had made such allegations. *See* App. Vol. V at 1568, 1585–86 (Decision).

[14] Plaintiff repeated the only potentially gender-related finding that McMicken had compared her to a secretary. (Pl. Br. at 36). But she did not address that this finding was blatantly contradicted by the record. (*See* Defs.' Br. at 24–25).

Citing the CSC Decision, Plaintiff also contended she was "singled out for closer scrutiny than a similarly situated male Battalion Chief." (Pl. Br. at 40.) But the CSC Decision never received any evidence or decided whether the male battalion chief, Brady George, was similarly situated. George said he had not been told not to use acronyms on his calendar, but there was no evidence that his supervisors could not locate him during work hours and saw confusing acronyms on his calendar, which is the problem that precipitated the request to Plaintiff. (*See* App. Vol. IV at 1060–61 (CSC Decision)).) Nor did George even have

treated a man in such a way."[15] This was error. Governing law required Plaintiff to come forward with evidence that McMicken harassed her "based on gender." *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005). By permitting Plaintiff's sexual harassment claim to move forward without this evidence, the district court wrongly applied the law. McMicken is entitled to qualified immunity.

### D.    The District Court Erred in Concluding Dale's Conduct Met the Legal Standard for Pervasive Harassment

The district court erred in denying Dale qualified immunity because the court's findings do not amount to pervasive conduct under this Court's governing legal standards. The district court found there were six relevant comments over the course of three years— the majority of which were the use of the term "bitch," including in a conversation where Plaintiff herself used the term.[16] (*See* Defs.' Br. at 30.) Plaintiff attempts to increase the number of incidents by arguing the district court found Steve Hoffman reported Dale made multiple disparaging remarks about Plaintiff. (Pl. Br. at 42.) But those remarks are that

---

the same supervisor as Plaintiff. (*See* App. Vol. V at 1470; App. Vol. III at 769 (organizational chart showing McMicken as Plaintiff's supervisor and Gary McCarty as George's).) *See Strickland v. United Parcel Serv., Inc.,* 555 F.3d 1224, 1233 (10th Cir. 2009) ("Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline.").

[15] App. Vol. V at 1580 n.25 (Decision).

[16] Plaintiff also argues the Court should consider David Everitt's testimony that he heard Dale use the term "bitch" because she contends Defendants did not cite evidence that Plaintiff was unaware of this comment during her employment. (Pl. Br. at 441, n.18.) But at summary judgment, *Plaintiff* was obligated to come forward with evidence to establish a genuine dispute of material fact. Plaintiff did not cite to any materials—including her four amended complaints, various EEO charges, discovery responses, or testimony— indicating she was aware of this statement during the period of her employment.

Dale "did not like" Plaintiff, he "wrote her up," and he was going to "hold her accountable."[17] Even if made, these comments do not constitute harassment on the basis of sex; they have nothing to do with Plaintiff's sex. Plaintiff also asserts the district court found Crystal VanDongen's report was "not limited to a single instance." (Pl. Br. at 42.) But Plaintiff did not respond to Defendants' arguments that VanDongen's other allegations were far too "vague and conclusory, without reference to specific dates or circumstances" to "suffice to create a genuine issue of material fact."[18] (Defs.' Br. at 28–29 (quoting *Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000)).)

The sum of Dale's comments do not amount to a constitutional violation under this Court's governing precedent. A handful of offhand comments or offensive utterances over the course of several years between colleagues who worked together for multiple decades does not constitute the "steady barrage of opprobrious [sexual] comments" that Plaintiff was required to establish. *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005). The district court erred in denying Dale qualified immunity.

---

[17] App. Vol. V at 1578 (Decision).

[18] Plaintiff also asks this Court to aggregate "gender bias" and "retaliatory animus" by considering the entirety of the evidence and argument presented below on Plaintiff's ADA and retaliation claims to bolster her sexual harassment claim. (Pl. Br. at 46–47 (citing *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir. 1987)).) In *Hicks*, the Court permitted evidence of harassment based on two suspect classifications (race and gender), but *Hicks* does not hold that Plaintiff can establish an Equal Protection sex discrimination violation with allegations of retaliation or failure to accommodate. If the Court considers Plaintiff's retaliation and ADA claims, Defendants request the opportunity to present supplemental briefing on all aspects of those claims.

### E.    Neither the District Court Nor Plaintiff Properly Analyzed Whether Any Individual's Conduct Violated Clearly Established Law

The district court also erred in concluding Plaintiff met her heavy burden on the second prong of the qualified immunity analysis. An official is entitled to qualified immunity if "the law did not put the [official] on notice that his conduct would be clearly unlawful." *Saucier v. Katz*, 533 U.S. 194, 195 (2001). Neither the district court nor Plaintiff undertook this analysis. Instead, the district court relied on the highly generalized proposition that it was clearly established that sexual harassment violated the law.[19]

On appeal, Plaintiff again erroneously frames the inquiry as "whether sexual harassment under color of state law violates the Equal Protection Clause." (Pl. Br. at 48.) But that simply begs the question—what conduct is sexual harassment? *That* is what must be clearly established. To hold otherwise would render moot the doctrine of qualified immunity. *See Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) ("[A] general statement of law—such as that a state cannot increase one's vulnerability to private violence—is not sufficient to show that the law was clearly established."); *Herring v. Keenan,* 218 F.3d 1171, 1176 (10th Cir. 2000) ("A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it.").

Plaintiff's own cited cases confirm this conclusion. (Pl. Br. at 49 n.19.) In *Stepp v. Proctor*, this Court confirmed a sexual harassment claim could be brought under the Equal Protection Clause, but it acknowledged that "*what constitutes a hostile work environment in the context of 42 U.S.C. 1983 is not clearly established in this circuit.*" 13 F.3d 407, \*1

---

[19] App. Vol. VI at 1585 (Decision).

(10th Cir. 1993) (unpublished) (emphasis added). It expressly declined to answer that question, instead concluding that "[w]hatever may constitute a hostile work environment under 1983, two specific instances of improper conduct do not."[20] *Id.* at *2; *see also Mitchell v. City & Cnty. of Denver*, 112 F. App'x 662, 671 n.11 (10th Cir. 2004) (unpublished) (recognizing that "[a]lthough it is well-established that sexual or racial harassment can be actionable under § 1983," "it is not clear what constitutes a § 1983 hostile work environment").

In fact, Plaintiff's own argument makes clear why the fact-specific inquiry of the second prong is necessary. Plaintiff contends there is a clearly established violation whenever "common sense, and an appropriate sensitivity to social context show that gender-based conduct" crossed the line. (Pl. Br. at 50.) But what exactly do "common sense" and "an appropriate sensitivity to social context" mean in any given scenario? On cases that are close to the line, how is an official to know when they have crossed it? The Supreme Court has answered that question: when precedent tells them so. Neither before the district court nor this Court did Plaintiff even attempt to carry her burden to identify

---

[20] Additionally, in *Fye v. Oklahoma Corporation Commission*, defendant argued the Court must "undertake a more 'particularized' review" of his conduct because "there was no case factually similar enough." 175 F. App'x 207, 211 (10th Cir. 2006) (unpublished). The Court did *not* reject this approach; rather, it held the standard was satisfied because the conduct was egregious enough that every official should have known it was a violation. *Id.* It further confirmed this approach by also denying qualified immunity based on a factually analogous case. *See id. J.A. v. Tucumcari Municipal Schools* is also unhelpful. 321 F.3d 1285 (10th Cir. 2003). In that case, a teacher rubbed his students' bodies underneath their clothes. The issue was not whether that conduct was clearly sexual harassment, but whether it was clearly established that "teacher-on-student" harassment was actionable given the majority of precedent had occurred in the employment context. *Id.* at 1289.

relevant precedent.

Plaintiff also contends the second prong of qualified immunity need not be considered on an individual basis, and that this Court should affirm the district court's ruling addressing all three Individual Defendants in the aggregate. (Pl. Br. at 51–53.) This too is directly contrary to precedent. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). An official cannot be liable simply because it would be a clearly established violation if their conduct was hypothetically combined with the conduct of others.

In sum, the district court failed to analyze whether the specific conduct at issue was a clearly established violation. It compounded that error by considering the aggregate conduct of all three Individual Defendants in denying qualified immunity to each. Because Plaintiff did not meet her burden under the proper framework, this Court should reverse.

## IV.  PLAINTIFF'S PENDENT TITLE VII AND *MONELL* CLAIMS ARE INEXTRICABLY INTERTWINED AND SHOULD BE DISMISSED

Plaintiff's claims against Salt Lake City under Section 1983 and Title VII for gender discrimination and hostile work environment should also be dismissed. For Section 1983, a "municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). For the reasons stated above, the district court's conclusion that Plaintiff showed a constitutional violation for gender discrimination or hostile work environment was error. When the Court reverses on the first prong of qualified immunity, pendent jurisdiction is

appropriate over a Section 1983 *Monell* claim because it is "coterminous" and thus "inextricably intertwined" with the appealable claim. *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995). Similarly, Plaintiff's Title VII claims should be dismissed because the "only facts [Plaintiff] raises in support of an Equal Protection violation are the same facts she raises in support of her Title VII claims," and thus her "attempt at utilizing *McDonnell Douglas* for the same reason it failed under Title VII." *Bird v. W. Valley City*, 832 F.3d 1188, 1209 (10th Cir. 2016).

Plaintiff does not dispute this is the case. Instead, she contends if this Court reverses on the *second* prong of qualified immunity, it would not necessarily resolve the pendent claims. (Pl. Br. at 61–63.) Defendants agree. Their pendent jurisdiction request is premised on a first-prong decision.

## **<u>CONCLUSION</u>**

Defendants request the Court grant summary judgment on Plaintiff's claims against the Individual Defendants and on her claims against Salt Lake City for hostile work environment and gender discrimination.

DATED: June 14, 2024.

SALT LAKE CITY CORPORATION


/s/ *Katherine R. Nichols*
Katherine R. Nichols

*Attorneys for Defendants/Appellants Salt Lake City Corporation, Karl Lieb, Brian Dale, and Robert McMicken*

## <u>CERTIFICATION OF COUNSEL</u>

The undersigned hereby certifies that:

1.      This brief complies with the type volume limitation as required by Fed. R. App. P. 32(a)(7)(B), and contains 6,464 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). Further this brief complies with the typeface and typestyle requirements of Fed. R. App. P. 32(a)(5)-(6) because it was prepared in a proportionally spaced font using Microsoft Word 2016 and in 13-point Times New Roman font.

2.      Pursuant to Tenth Circuit Local Rule 25.5, all required privacy redactions have been made.

3.      Pursuant to Tenth Circuit Local Rule 31.5, the seven (7) copies being submitted to the Clerk's Office are exact copies of the version submitted electronically.

4.      This file has been scanned for viruses using SentinelOne, Version 23.4.2.216, last updated May 21, 2024.

DATED: June 14, 2024.

/s/ *Katherine R. Nichols*
Katherine R. Nichols

*Attorneys for Defendants/Appellants*